IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GALAXY DISTRIBUTING OF
WEST VIRGINIA, INC., et al.,

            Plaintiffs,

v.                                  CIVIL ACTION NO. 2:15-cv-04273

STANDARD DISTRIBUTING, INC.,

            Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the defendant's Motion to Dismiss Pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6) [Docket 4]. The Motion, having been fully briefed by the parties, is now ripe for review. Based on the reasoning set forth below, the Motion is **DENIED AS MOOT**.

**I.    Background**

Galaxy Distributing of West Virginia, Inc. ("Galaxy") and Standard Distributing Inc. ("Standard") are competing wine and beer distributors doing business in West Virginia. Galaxy and its licensed representative Shawn Rucker brought the pending suit against Standard, alleging that Standard sent two fraudulent emails to Galaxy's customers in the fall of last year.[1] The facts leading up to the lawsuit, viewed in the light most favorable to Galaxy, are as follows:

On October 21, 2014, Galaxy learned about an email (the "October email") received by one of its customers, Food Lion, a food and wine retailer in North Carolina. (Compl. [Docket 1] ¶ 16). The email stated:

---

[1] Both Galaxy and Mr. Rucker are plaintiffs in this matter. I refer to them collectively as "Galaxy."

> Hi Mike we here at Galaxy made a mistake about Candoni Wines that are in your stores. Under West Virginia Law Standard Distributing has 90day's [sic] to sell their goods. And keep the authorizations. We have included a copy of the Law[.]

(Ex. A, Email (Oct. 21, 2014) [Docket 1-2]). The email was signed "Shawn Rucker, Pricing & Programming Coordinator, Galaxy Distributing of West Virginia" and came from the email address galaxywines@outlook.com. (*Id.*). Food Lion forwarded the email to Candoni Wines, one of Food Lion's wine suppliers, who then notified Galaxy. (Compl. [Docket 1] ¶ 20). Galaxy and Mr. Rucker claim they have never used this email address and had no knowledge of the email. (*Id.* ¶ 18). Notably, Galaxy had recently acquired the right to distribute the Candoni Wines brand, which was previously held by Standard. (*Id.*).

Galaxy learned of a second email on November 5, 2014 (the "November email"). The email was received by Galaxy's customer Breitenbach Winery, a wine supplier in Ohio, and stated: "Tell Scott that i [sic] will put the wine on sale when i'm dam [sic] good and ready." (*Id.* ¶ 22–23; *see also* Ex. B, Email (Nov. 5, 2014) [Docket 1-3]). Like the October email, the November email came from "Shawn Rucker" using the same address, galaxywines@outlook.com. (Compl. [Docket 1] ¶ 22). And as with Candoni Wines, Galaxy had recently acquired the right to distribute Breitenbach Wine, which was previously distributed by Standard. (*Id.* ¶ 24).

After learning about the October email, Galaxy filed a civil action in Kanawha County Circuit Court. (*Id.* ¶ 29). Galaxy issued a subpoena *duces tectum* to Microsoft Corporation on October 28, 2014, requesting subscriber information related to the unknown email account, along with billing information and internet connection logs. (*Id.* ¶ 30). Microsoft produced the requested information on January 14, 2015. (*Id.* ¶ 31). Microsoft determined that the account is registered under the name "Mr. Rucker"; logins to the account originate from the IP address

208.180.137.35, which is owned by the internet service provider Suddenlink Communications; the domain name assigned to the IP address is "remote.standarddistwv.com"; and emails were sent from the account on October 21, 2014, October 30, 2014, and November 5, 2014. (*Id.*).

Galaxy subsequently issued a subpoena *duces tectum* to Suddenlink, requesting information related to the IP address and domain name. (*Id.* ¶ 32). Suddenlink responded by letter dated January 26, 2015, informing Galaxy that the information requested could not be produced without a court order. (*Id.* ¶ 33; *see also* Ex. G, Letter from Suddenlink to Galaxy (Jan. 26, 2015) [Docket 1-8]). On February 6, 2015, before Galaxy could file a motion for court order, Standard appeared in the circuit court proceedings. (Compl. [Docket 1] ¶ 34). Standard filed a motion to quash the subpoena issued to Suddenlink and a motion to intervene. (*Id.*). Interpreting Standard's actions as an admission to owning the email account and sending the fraudulent emails, Galaxy filed the instant action on April 8, 2015. (*Id.* ¶ 35).

Galaxy's Complaint alleges that Standard, by portraying itself as Galaxy and Mr. Rucker in these unauthorized emails, "has engaged in intentional and malicious acts of interference with [Galaxy's] business relationships." (*Id.* ¶ 37). Galaxy claims that Standard's conduct has caused material harm, including "emotional distress, loss of good will, damage to reputation, loss of sales[,] and loss of profits." (*Id.* ¶ 41). Accordingly, Galaxy asks the court to provide it with equitable relief. Count I of its Complaint requests an order, pursuant to the Declaratory Judgment Act, declaring that Standard violated four federal statutes: (1) 18 U.S.C. § 1001, criminal fraud; (2) 18 U.S.C. § 1028(a)(7), criminal identity theft; (3) 18 U.S.C. § 1343, criminal wire fraud; and (4) 18 U.S.C. § 1961, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Count II asks for a preliminary and permanent injunction requiring Standard to stop all fraudulent activity. Importantly, Galaxy is not seeking relief in the form of monetary damages.

On April 28, 2015, Standard moved to dismiss Galaxy's Complaint on a number of grounds. (Mot. to Dismiss Pursuant to Rule 12(b)(1), 12(b)(2) & 12(b)(6) [Docket 4]). A hearing on Standard's Motion was held on July 7, 2015. (Daybook Entry [Docket 18]). At the hearing, Standard—though admitting its IP address was the source of the emails—denied any responsibility and primarily argued that Galaxy's claims should be dismissed as inadequately pled. I cannot reach that issue, however, because, as explained below, the remedial action Galaxy requests in its Complaint exceeds this court's jurisdiction.

## II.     Legal Standard

The issue raised by this case—whether a private, equitable remedy should be afforded for violation federal statutes that do not expressly provide for an equitable remedy—exists at the intersection of several jurisdictional concepts: subject-matter jurisdiction, standing, implication of a private cause of action, and relief. *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1079 (9th Cir. 1986) (explaining that under these circumstances, jurisdictional concepts "overlap . . . even more than they ordinarily would" (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 455–56 (1974))). As the court did in *Wollersheim*, I opt to treat the issue as a "generic problem of 'federal jurisdiction' without attempting to characterize it with greater specificity." *Id.* A federal court must dismiss a case *sua sponte* if it appears at any time during the proceedings that its exercise of jurisdiction would be improper. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

### III. Discussion

I **FIND** this court lacks subject matter jurisdiction over this action because the federal claims stated by Galaxy do not provide for the private, equitable relief it has requested. Three of the statutes under which Galaxy seeks relief—§§ 1001, 1028, and 1343—are criminal statutes with no civil components. The remaining statute, RICO, though providing for a civil cause of action in damages, does not expressly or implicitly create a private right of action for equitable relief, the only form of relief sought by Galaxy.

#### A. 18 U.S.C. §§ 1001, 1028(a)(7), and 1343

Galaxy claims that Standard "engaged in illegal fraudulent acts under 18 U.S.C. § 1001," (Compl. [Docket 1] ¶¶ 49–51); "engaged in illegal identity theft and fraud under 18 U.S.C. § 1028(a)(7)," (*id.* ¶¶ 52–54); and "engaged in illegal wire fraud under 18 U.S.C. § 1343," (*id.* at 55–58). Galaxy asks the court to "enter an Order declaring that Standard violated Plaintiffs' rights under [these statutes]." (*Id.* ¶ 66). Galaxy, however, as a private plaintiff, does not have any rights under these statutes.

Section 1001, in short, prohibits false, fraudulent, or fictitious representations of material fact "in any matter within the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a) (2012). The Fourth Circuit Court of Appeals has held that § 1001 is a criminal code provision, and there is "no basis for implying a civil cause of action" from it. *Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987). The Fourth Circuit has reached the same conclusion with respect to § 1028(a)(7), which criminalizes identity theft, *see Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), *aff'd* 182 F.3d 909 (4th Cir. 1999) (dismissing a civil plaintiff's § 1028 claim because § 1028 "do[es] not provide for any private cause of action"), and with respect to § 1343, which criminalizes

5

fraud by means of wire, radio, or television communication, *see Tribble v. Reedy*, 888 F.2d 1387, *1 (4th Cir. 1989) (unpublished table decision) (holding that § 1343 is a "bare criminal statute" and provides no basis for a private right of action). Therefore, to the extent Galaxy's Complaint seeks declaration of private rights under §§ 1001, 1028(a)(7), or 1343, its claims are **DISMISSED**.

### B.  RICO

Although §§ 1028(a)(7) and 1343 do not provide private rights of action on their own, violation of these statutes can serve as predicate acts for a claim under RICO § 1964(c), which provides a civil cause of action for victims of criminal racketeering activity:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]

18 U.S.C. § 1964(c). In other words, § 1964(c) allows a civil plaintiff to sue for treble damages if the defendant violated § 1962 and, as a result, caused injury to the plaintiff in his business or property. In turn, "[a] violation of § 1962(c), the section on which [Galaxy] relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The prohibitions set forth in §§ 1028(a)(7) and 1343 are included in the definition of "racketeering activity." *Id.* § 1961(1).[2] Therefore, whether Standard violated these statutes is relevant to evaluation of Galaxy's RICO cause of action.

I need not get this far in my analysis, however, to conclude that this case must be dismissed. Galaxy has only requested equitable relief, and, although the courts are split on the issue, *compare Wollersheim*, 796 F.2d at 1077 (finding that RICO does not provide private plaintiffs with equitable relief), *with Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687, 698

---

[2] At the hearing on this matter, Galaxy conceded that § 1001 is not included as "racketeering activity" under RICO.

(7th Cir. 2001) (finding that RICO authorizes private parties to seek injunctive relief), I conclude that RICO cannot be used as a vehicle for a private cause of action in equity. This conclusion aligns with the holding of a fellow district judge within the Fourth Circuit, who, relying on the Ninth Circuit's reasoning in *Wollersheim*, declined to recognize equitable relief under RICO. *See Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 794–96 (D. Md. 2009).

> The *Wollersheim* court began with a textual analysis of § 1964:[3]
>
> Section 1964 has four parts. Part (c) was added late in RICO's legislative passage through Congress. The bill passed by the Senate included only the present parts (a), (b), and (d). [citations omitted]. Part (a) is a broad grant of equitable jurisdiction to the federal courts. Part (b) permits *the government* to bring actions for equitable relief. Part (d) grants collateral estoppel effect to a criminal conviction in a subsequent civil action by the government. Part (c), the private civil RICO provision, states that a private plaintiff may recover treble damages, costs and attorney's fees. In contrast to part (b), there is no express authority to *private plaintiffs* to seek the equitable relief available under part (a).
>
> Admittedly, part (c) also does not expressly limit private plaintiffs "only" to the enumerated remedies, nor does part (a) expressly limit the availability of the illustrative equitable remedies to the government. *See* Strafer, Massumi, and Skolnick, *Civil RICO in the Public Interest: "Everybody's Darling,"* 19 Am. Crim. L. Rev. 655, 710 (1982). However, the inclusion of a single statutory reference to private plaintiffs, and the identification of a damages and fees remedy for such plaintiffs in part (c), logically carries the negative implication that *no other remedy* was intended to be conferred on private plaintiffs.

*Wollersheim*, 796 F.2d at 1082–83 (footnotes omitted) (emphasis in original). Though agreeing that § 1964(c) may have other plausible readings, the Ninth Circuit found these readings incorrect based on RICO's legislative history:

> [T]wo separate episodes from the history of civil RICO's legislative passage convince us that the conclusions the [plaintiff] would have us draw from [other] congressional statements do not reflect Congress'[s] intent in section 1964. *First*, the House rejected an amendment, described as "an additional civil remedy," which would expressly permit private parties to sue for injunctive relief under section 1964(a). *Second*, in the very next year after RICO's enactment, Congress

---

[3] This analysis is particularly relevant in this case because, at the hearing on Standard's Motion, Galaxy's counsel emphasized the text of § 1964 in his argument that RICO provides for injunctive relief.

> refused to enact a bill to amend section 1964 and give private plaintiffs injunctive relief.

*Id.* at 1985 (emphasis in original).

The Ninth Circuit was also persuaded by the similarities between RICO and the treble damages provision of the Clayton Act, 15 U.S.C. § 15(a), which the Supreme Court has held precludes private injunctive relief. *See Wollersheim*, 796 F.2d at 1086–87 (quoting *Paine Lumber Co. v. Neal*, 244 U.S. 459, 471 (1917)). Finally, the Ninth Circuit found expansion of civil RICO to be inconsistent with Supreme Court doctrine on the limitations of implying causes of action or remedies not expressly stated by statute. *See id.* at 1088 ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981))).

For these reasons, the Ninth Circuit concluded that Congress "did not intend to give private RICO plaintiffs access to equitable remedies." *Id.* at 1087. Although the Fourth Circuit has yet to expressly address this issue, dictum indicates that the Fourth Circuit would stand with *Wollersheim*. *See Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 726 (4th Cir. 1999) ("[T]here is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief." (quoting *Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983))). Accordingly, I join the Ninth Circuit and the United States District Court for the District of Maryland and hold that equitable relief is not available under RICO. Because RICO does not provide for Galaxy's requested relief of declaratory judgment and permanent/preliminary injunctions, the court does not have the power to hear this case. Galaxy's RICO claims are **DISMISSED**.

**IV.     Conclusion**

Galaxy's Complaint [Docket 1] is **DISMISSED** for lack of subject matter jurisdiction over the claims asserted. Standard's Motion to Dismiss [Docket 4] is **DENIED AS MOOT**. The court **ORDERS** that this case be **DISMISSED** and **STRICKEN** from the docket. The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 16, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE